## HUMPHREY LAKEMAN *vs.* WILLIAM BURNHAM.

All the inhabitants of the Commonwealth have the right to take shell fish from flats lying between high and low water mark and within one hundred rods of the upland, unless the owner of the flats has had a grant of such fishery from the legislature, or such occupation as to raise a presumption of such a grant, or actual possession of the flats by building on or inclosing them so as to exclude the access of boats and vessels.

ACTION OF TORT, commenced at September term 1855 of the court of common pleas, against an inhabitant of the town of Essex, for breaking and entering the plaintiff's close in Ipswich, bounded northerly on Ipswich River and the Atlantic Ocean, and known as Patch's Beach, and digging up and carrying away and converting to the defendant's use twenty bushels of clams. Answer, a common right of free fishery in all the citizens of the Commonwealth, and that the acts complained of were done in the exercise of such right.

At the trial in that court, the plaintiff proved that the close described in the declaration formerly belonged to John Patch, his grandfather, who died in 1799, and was included in the following devise from John Patch to his daughter Mary, the plaintiff's mother: "I give and devise to my daughter Mary Lakeman, and to her heirs and assigns, my lower farm, formerly called

Wigwam Hill, bounded as follows, namely, beginning at the river, and from thence running by the creek which parts said farm from marsh of Nehemiah Patch to a pond, thence running westerly by marsh of said Patch and Dane up to the line where the old fence formerly stood and down into the sea, with the privilege of the clams; also one mile in length of my beach for drift wood and timber, lying between the other parts of said beach hereinafter given to my daughter Elizabeth Choate." John Patch also devised to his daughter Elizabeth Choate, her heirs and assigns, that part of his farm known as Castle Hill, on the other side of said old fence; " and half a mile of the lower end of the beach, to be measured at high water mark, for drift wood and timber of all sorts; and all the remainder of my beach with a privilege of digging ten barrels of clams yearly at the southerly end of my farm."

The plaintiff also introduced evidence tending to show that he had lived on the Wigwam Hill Farm for sixty two years, and had had the principal management of it for forty five years; that he and his father before him (who died more than twenty years ago at the age of eighty two) had always claimed the exclusive right to dig clams on that part of the beach which included the premises described in the declaration, and had been in the habit, every year, of selling rights to other persons to dig clams, either by the barrel or by the tide, and had always driven away persons who came to dig clams without their leave, and had often prosecuted and recovered judgment against them before a justice of the peace; that for more than twenty years the plaintiff had taken pains to cultivate clams on these flats by transplanting and propagating them; that before the publication, in 1854, of the decision of this court in *Weston* v. *Sampson*, 8 Cush. 347, no one ever claimed a right to dig clams on these flats; and that since that time the plaintiff went with a number of men, and dug a ditch around the flats where he had planted clams, and put down stakes, but they were pulled up by persons who came to dig.

The plaintiff also put into the case, as matters of fact, the decisions of this court in the cases of *Brown* v. *Lakeman*, 15 Pick.

151, and *Lakeman* v. *Butler*, 7 Pick. 436, to both of which he was a party.

Upon this evidence, the plaintiff claimed that he had established by prescription an exclusive right of fishery on the flats in question, and had brought his case within the exception in *Weston* v. *Sampson*, 8 Cush. 355.

But *Morris*, J., being of opinion that this evidence, assuming all of it to be true, was not sufficient to justify the jury in finding such a prescription, directed a verdict for the defendant, which was returned, and the plaintiff alleged exceptions.

*S. B. Ives, Jr.* ( *O. P. Lord* with him,) for the plaintiff. A several fishery in an arm of the sea, where the tide ebbs and flows, may be derived from prescription, by the owner of the soil. *Carter* v. *Murcot*, 4 Bur. 2162. *Somerset* v. *Fogwell*, 5 B. & C. 875. *Rogers* v. *Allen*, 1 Campb. 309. *Mayor &c. of Orford* v. *Richardson*, 4 T. R. 439. 9 Petersd. Ab. 677. *Gould* v. *James*, 6 Cow. 369. *Rogers* v. *Jones*, 1 Wend. 237. *Collins* v. *Benbury*, 5 Ired. 118. *Melvin* v. *Whiting*, 10 Pick. 295. *Dunham* v. *Lamphere*, 3 Gray, 268. *Martin* v. *Waddell*, 16 Pet. 410, 423–427.

The plaintiff showed an adverse, exclusive and uninterrupted use of a several fishery upon the flats in question, under a claim of right, for a period long enough to raise the presumption of a grant. *Melvin* v. *Whiting*, 10 Pick. 295. *Coolidge* v. *Learned*, 8 Pick. 504. *Collins* v. *Benbury*, 5 Ired. 118. *Pierre* v. *Fernald*, 26 Maine, 436. 2 Greenl. Ev. § 539.

He also proved that this very exclusive and several fishery had been made the subject of litigation, as a several fishery, and had been recognized as such by the decisions of this court. *Brown* v. *Lakeman*, 15 Pick. 151. *Lakeman* v. *Butler*, 17 Pick. 436.

It has never been decided that, in order to gain a several fishery, the owner of the soil must actually make erections upon the flats, and the intimations to that effect are mere *obiter dicta*. *Weston* v. *Sampson*, 8 Cush. 347. *Commonwealth* v. *Alger*, 7 Cush. 66. *Locke* v. *Motley*, 2 Gray, 265. *Porter* v. *Shehan*, *ante*, 435.

The question, whether the plaintiff had shown such a prescriptive right as the law required, should have been submitted to the jury. *Hill* v. *Crosby*, 2 Pick. 466.

The defendant, not being an inhabitant of the town of Ips-
wich, cannot claim a right of free fishery under the colony
ordinance of 1641–7. *Weston* v. *Sampson,* 8 Cush. 347.

*W. D. Northend,* for the defendant.

SHAW, C. J. The rights of the people of this commonwealth
to the benefits of navigation and fishery in the sea, and in the
shores, bays and arms of the sea, and the qualified rights of
proprietors of lands bordering on tide waters, in the flats lying
between high and low water mark, have been so largely dis-
cussed and deliberately decided in numerous recent cases, that
we do not think it expedient to go again much at large into the
principles and authorities on which this case must be decided.
*Weston* v. *Sampson,* 8 Cush. 347. *Commonwealth* v. *Alger,* 7
Cush. 53. *Dunham* v. *Lamphere,* 3 Gray, 268.

By these cases, we think the following propositions are wel
established : That by the Revolution, and by the acknowledg-
ment of our independence by the British Government, the State
of Massachusetts succeeded to all public rights of British sub-
jects, whether originally belonging by prerogative to the Crown,
or exercised and administered by Parliament in due course of
law ; that by the charter of the Colony of Massachusetts the
people and settlers of the territory acquired not only the right of
soil, but a right to the shores and arms of the sea, for all useful
purposes of navigation and fishery ; that since that charter no
exclusive right of navigation or fishery, on the sea shores or in the
bays or arms of the sea, could be acquired, except under the au-
thority of the colonial, provincial or constitutional government,
administered by the legislature by act or resolve ; that though
perhaps, in the absence of such proof by act or resolve, such
grant might be proved by adverse use and enjoyment, it must
amount to that degree of exclusive occupation, sufficient to raise
a belief that such act or resolve had actually been passed, though
not now appearing ; and, in general, this can only be done by
showing an actual possession of the flats where the tide ebbs
and flows, by building thereon or inclosing the same, so as to
exclude the access of boats and vessels ; that the common law,
giving the rights of navigation and fishery to the public, remains

in force in this state, except so far as it is qualified and restrained by the colony ordinance of 1647, giving to the proprietor of the upland the fee in the soil, in flats flowed by tide water, to the extent of one hundred rods; but by the terms of that ordinance and the construction given to it, the rights of all the members of the community, to navigation and fishery in tide waters, on the shore and flats below high water mark, remain until the proprietor elects to build a wharf, or otherwise fill up and inclose such flats.

On these grounds the court are of opinion, that the plaintiff has shown no proof of an exclusive right to the clam fishery; that he has proved an ownership in the soil only, which is not inconsistent with the public right to the shell fishery in the flats; and that the case is governed by that of *Weston* v. *Sampson*, 8 Cush. 347. *Exceptions overruled*